AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

US DISTRICT COURT
WESTERN DIST. ARKANSAS
FILED
MAY 1 6 2019
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

The Cellular Telephone Assigned
Call Number (919) 395-1820

)
)
)
)
)

Case No. 2:19-CM-19_____

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Western _____ District of _____ Arkansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sec. 841(a)(1) and 846 | Conspiracy to Distribute Methamphetamine, a Schedule II Controlled Substance |
| 21 U.S.C. Sec. 841(a)(1) | Distribution of more than 5 grams of Methamphetamine |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Andrew Chronister, Special Agent Drug Enforcement Adm.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/16/19

*Judge's signature*

City and state: Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER
**(919) 395-1820**

Case No. 2:19cm-19____

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Chronister, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned call number **(919)-395-1820** with listed subscriber(s) unknown (the "Target Cell Phone"), whose service provider is **Sprint**, a wireless telephone service provider headquartered at 6480 Sprint Parkway Overland Park, KS 66251. Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b) (1).

3.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been employed in this capacity since April 2018. I am currently assigned as a Special Agent to the

Fort Smith Post of Duty Office in Fort Smith, Arkansas. Before being employed with the DEA, I was employed by the Kansas City, Kansas Police Department from December 2012, to April of 2018.

4.    During my employment with the DEA and Kansas City, Kansas Police Department, I have had formal training and experience in the investigation of controlled substances and I am familiar with the manner in which controlled substances, including marijuana, cocaine, methamphetamine, and other controlled substances, are packaged, distributed, consumed and are identified. I have participated in executing numerous arrests and search warrants for violations involving such substances. In the course of my employment, I have become familiar with the ordinary meaning of controlled substances slang and jargon, and I am familiar with the manners and techniques of traffickers who distribute controlled substances. I have also received training from experienced DEA Special Agents and other narcotics officers in the investigation of major drug traffickers.

5.    The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.    Based on the facts set forth in this Affidavit, there is probable cause to believe that Megan CASEY (hereinafter CASEY) has violated Conspiracy to distribute methamphetamine in violation of Title 21 U.S.C. 841 (a)(1), all in violation of Title 21 U.S.C. 846. CASEY was charged with these crimes on May 8, 2019 and is the subject of an arrest warrant issued on May 9, 2019. There is also probable cause to believe that CASEY is aware of these charges and is no longer staying in known locations. There is also probable cause to believe that the location information

described in Attachment B will assist law enforcement in arresting **CASEY**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including DEA, is conducting a criminal investigation of Megan CASEY, Ryan Thomas MILLER, Christopher MURPHY, Cory PHILLIPS, and Quan PHUNG regarding possible violations of Conspiracy to distribute methamphetamine in violation of Title 21 U.S.C. 841 (a)(1), all in violation of Title 21 U.S.C. 846.

9. The Cory PHILLIPS Drug Trafficking Organization (DTO) has been in operation in the western district of Arkansas for the past five (5) years. Credible and reliable information has been corroborated that the DTO distributes multi-pound quantities of methamphetamine on a weekly basis. The investigation has revealed that Russell HOFER, Ryan MILLER, Chris MURPHY, Megan CASEY, and Quan PHUNG are confirmed and active members of the PHILLPS methamphetamine DTO.

10. From June 2018 to the present, DEA Agents have been investigating the PHILLIPS DTO. Through confidential source (CS) interviews, CS controlled purchases, telephone toll analysis, search warrants and both physical and electronic surveillance, Agents have determined that Cory PHILLIPS is the head of the PHILLIPS DTO and currently resides in Uniontown, Crawford County, Arkansas in the Western District of Arkansas. Cory PHILLIPS is originally from Crawford County Arkansas and utilizes close associates that he trusts in order to distribute

large quantities of methamphetamine in the Crawford and Sebastian County area as well as in the Eastern District of Oklahoma. Phillips' main lieutenant in the PHILLIPS DTO is Russell HOFER, who resides in the Fort Smith, Sebastian County, Arkansas area.

11. Law enforcement agencies have conducted post arrest interviews with low-level members of the PHILLIPS DTO. During these interviews, the individuals have identified HOFER, MILLER, MURPHY, PHUNG and CASEY as bulk methamphetamine dealers in Western Arkansas who are being supplied by PHILLIPS. These individuals have further confirmed that the co-conspirators, working at the direction of PHILLIPS, have distributed multiple pounds of methamphetamine in the Western District of Arkansas and Eastern District of Oklahoma.

12. Through CS controlled purchases, physical and electronic surveillance, Agents have determined multi-pound quantities of methamphetamine are being delivered by vehicle to leaders in the PHILLIPS DTO. These deliveries are orchestrated by Cory PHILLIPS but PHILLIPS does not physically make contact with the drugs. Leaders in the DTO, such as HOFER, MILLER, MURPHY, and PHUNG receive pound quantities as directed by PHILLIPS. These leaders in the DTO then break the methamphetamine down into ounce quantities which are delivered to local dealers by personal vehicles for distribution to street level consumers. The proceeds from the sale of methamphetamine is then directed back to PHILLIPS.

13. Of particular importance is a confidential source (CS) developed in June of 2018. Information provided by the CS has been verified through text messages, toll analysis and surveillance. The CS advised that methamphetamine is being obtained from two sources: Cory PHILLIPS and HOFER. The CS said that HOFER was supplied by PHILLIPS. The CS advised that the CS has been part of the DTO since approximately September of 2017. The CS reported HOFER and the CS would obtain approximately one pound of methamphetamine per day from

PHILLIPS, which was in turn sold. The CS advised that all profits from the sale of methamphetamine were directed back to PHILLIPS. The CS stated that PHILLIPS obtains approximately 30 pounds of methamphetamine at a time. The CS advised PHILLIPS has individuals involved in the DTO store the illicit drugs at their residences, thus negating PHILLIPS' risk of being caught with the controlled substances. The CS stated PHILLIPS arranges the delivery of the methamphetamine to individuals in the DTO but PHILLIPS would not deliver methamphetamine personally. PHILLIPS urged individuals in the DTO to sell at least one pound per day, as the CS and HOFER did from approximately September 2017 through June 2018. The CS confirmed that PHILLIPS communicates with the CS, HOFER, MILLER, MURPHY, CASEY, and PHUNG regarding the distribution of methamphetamine via cell phones.

14.    On August 25, 2018, a post arrest and post Miranda interview was conducted with Cooperating Defendant #1 (hereinafter CD#1). CD#1 advised that on August 24, 2018, CD#1 followed CASEY to MILLER'S father's house in Pocola Oklahoma. CD#1 was handed two pounds of methamphetamine by CASEY and an unidentified male subject inside the residence. CD#1 stated that CASEY was then supposed to follow him/her but CD#1 sped away. CD#1 stated that he/she paid CASEY $500 on August 23, 2018 for money owed to MILLER for previous fronts of methamphetamine and the two pounds of methamphetamine. CD#1 stated that CASEY was attempting to gather money up owed to MILLER in order to get MILLER out of jail. CD#1 stated that the only person that knew where MILLER stored his methamphetamine was CASEY. On August 24, 2018, CD#1 advised that CASEY came to his/her residence and asked if he/she needed another pound of methamphetamine. CD#1 advised CASEY that he/she had not sold all of the other two pounds and did not need another pound.

15.    On October 2, 2018, Fort Smith Police Department Narcotics Unit conducted a controlled purchase of 3.5 grams of methamphetamine for $100 from CASEY utilizing a CS for this transaction.

16.    On October 9, 2018, a post arrest post Miranda interview was conducted with Cooperating Defendant #2 (hereinafter CD#2). CD#2 advised that on the night he/she was arrested he/she met with CASEY and gave CASEY $600. CD#2 stated that the $600 was part of the money that he/she owed MILLER. CD#2 stated that this was the first time CASEY had picked up money that CD#2 owed MILLER.

17.    On April 9, 2019, MILLER made a call from the Sebastian County Jail to the target number in order to speak with CASEY. MILLER continued to call the target number from the Washington County Jail on April 27, 29 and May 2, 3, and 6, of 2019. For every phone call, CASEY was the first and only person to answer the phone and even described the phone as being her number.

18.    In my training and experience, I have learned that **Sprint** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the

"sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

19.      Based on my training and experience, I know that **Sprint** can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint**'s network or with such other reference points as may be reasonably available.

20.      Based on my training and experience, I know that **Sprint** can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **Sprint** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

21.      Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

22.      I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

23. I further request that the Court direct **Sprint** to disclose to the Government any information described in Attachment B that is within the possession, custody, or control of **Sprint**. I also request that the Court direct **Sprint** to furnish the Government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **Sprint**'s services, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The Government shall reasonably compensate **Sprint** for reasonable expenses incurred in furnishing such facilities or assistance.

24. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation. Accordingly, there is good cause to seal these documents because their

premature disclosure may seriously jeopardize that investigation.

DATED this _____ day of May, 2019.

Respectfully submitted,

Andrew D. Chronister
DEA Special Agent

Affidavit subscribed and sworn to before me this **16** day of May, 2019.

Honorable Mark E. Ford
United States Magistrate Judge

## **ATTACHMENT A**

### **Property to Be Searched**

1. The cellular telephone assigned call number **(919) 395-1820**, with listed subscriber(s) unknown (the "Target Cell Phone"), whose wireless service provider is **Sprint**, a company headquartered at 6480 Sprint Parkway Overland Park, KS 66251.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **Sprint.**

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A

for a period of thirty days, during all times of day and night. "Information about the location of

the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude

data, and other precise location information, as well as all data about which "cell towers" (i.e.,

antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers)

received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter,

"Location Information") is within the possession, custody, or control of **Sprint**, **Sprint** is

required to disclose the Location Information to the government. In addition, **Sprint** must

furnish the government all information, facilities, and technical assistance necessary to

accomplish the collection of the Location Information unobtrusively and with a minimum of

interference with **Sprint**'s services, including by initiating a signal to determine the location of

the Target Cell Phone on **Sprint**'s network or with such other reference points as may be

reasonably available, and at such intervals and times directed by the government. The

government shall compensate **Sprint** for reasonable expenses incurred in furnishing such

facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this

warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18

U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information described above in Section I that will assist in arresting **Megan CASEY**, who was charged with violating violated **Conspiracy to distribute methamphetamine in violation of Title 21 U.S.C. 841 (a) (1), all in violation of Title 21 U.S.C. 846. CASEY** was charged with these crimes on **May 8, 2019** and is the subject of an arrest warrant issued on **May 9, 2019**, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant